UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TEYANA J. HENLEY,

                      Plaintiff,

v.

                      Case # 17-CV-445-FPG

                      DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

## INTRODUCTION

Teyana J. Henley brings this action pursuant to the Social Security Act seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 8. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On April 20, 2013, Henley protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 141-51. She alleged disability since February 1, 2013 due to a personality disorder, depression, and insomnia. Tr. 16, 168. On May 11, 2015, Henley and a

---

[1] References to "Tr." are to the administrative record in this matter.

1

vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Donald T. McDougall ("the ALJ"). Tr. 37-69. On September 11, 2015, the ALJ issued a decision finding that Henley was not disabled within the meaning of the Act. Tr. 16-24. On March 21, 2017, the Appeals Council denied Henley's request for review. Tr. 1-4. Thereafter, Henley commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. 20 C.F.R. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Henley's claim for benefits under the process described above. At step one, the ALJ found that Henley had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Henley has bipolar mood disorder and personality disorder, which constitute severe impairments. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 18-20.

Next, the ALJ determined that Henley retains the RFC to perform the full range of work at all exertional levels, but she can only occasionally work with the public, coworkers, and supervisors. Tr. 20-22. At step four, the ALJ relied on the VE's testimony and found that Henley can perform her past relevant work as a hand packer. Tr. 22-23. The ALJ made an alternative finding at step five and relied on the VE's testimony to determine that Henley can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 23-24. Specifically, the VE testified that Henley could work as a cleaner/housekeeper and warehouse worker. Tr. 23. Accordingly, the ALJ concluded that Henley was not "disabled" under the Act. Tr. 24.

## II. Analysis

Henley argues that remand is required because the ALJ's credibility finding is not supported by substantial evidence.[2] ECF No. 7-1 at 25-29; ECF No. 9 at 1-3. The Court agrees.

---

[2] Henley advances another argument that she believes requires reversal of the Commissioner's decision. ECF No. 7-1 at 16-25; ECF No. 9 at 3-6. The Court need not reach that argument, however, because it disposes of this matter based on the ALJ's improper credibility analysis.

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citation omitted). The ALJ's credibility findings "must be set forth with sufficient specificity to permit intelligible plenary review of the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014) (quotation marks and citation omitted); *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996)[3] (The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.").

"[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson*, 2009 WL 3764221, at *7 (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (citation omitted).

The ALJ must consider all of the claimant's statements about her symptoms and how those symptoms affect her daily activities and ability to work. 20 C.F.R. §§ 404.1529, 416.929 (effective June 13, 2011 to Mar. 26, 2017). However, the claimant's statements alone will not establish disability. *Id.* Thus, the ALJ must follow a two-step process when considering the claimant's alleged symptoms and their effect on her ability to work. The ALJ must first consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain

---

[3] S.S.R. 96-7p was superseded by S.S.R. 16-3p, which became effective on March 28, 2016. S.S.R. 96-7p, however, remains the relevant guidance for the purposes of Henley's claim, which was decided on September 11, 2015. *See Bailey v. Colvin*, No. 1:15-CV-00991 (MAT), 2017 WL 149793, at *5 n.2 (W.D.N.Y. Jan. 14, 2017).

5

or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit her work capacity. *Id.* at §§ 404.1529(c)(1), 416.929(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* at §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ found that Henley's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements about her symptoms were "not entirely credible." Tr. 20. The ALJ determined that Henley's allegations and testimony were inconsistent with her daily activities, treatment history, work history, and demeanor at the hearing. Tr. 21.

### A. Daily Activities

The ALJ discounted Henley's credibility because she "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [Henley] resides with her three young children, without any help with the daily household chores." Tr. 21.

It is unclear how living with her children and completing household chores refute Henley's allegations of disabling mental health impairments, because the ALJ did not explain how these

6

activities demonstrate that she can perform work-related mental activities[4] on a regular and continuing basis. *See Wilson v. Colvin*, 213 F. Supp. 3d 478, 490 (W.D.N.Y. 2016) (noting that the ALJ's credibility analysis "fails to recognize differences between being a parent, caring for one's children at home, and performing substantial gainful employment in the competitive workplace on a 'regular and continuing basis,' i.e., '8 hours a day, for 5 days a week, or an equivalent work schedule[.]'") (citations omitted). "Courts in this Circuit have definitively and uniformly rejected the discounting of a claimant's credibility based on the ability to perform such mundane activities." *Id.* at 489. "There are critical differences between activities of daily living (which one can do at his own pace when he is able) and keeping a full time job." *Dailey v. Colvin*, No. 1:14-CV-00841-MAT, 2017 WL 2569683, at *4 (W.D.N.Y. June 14, 2017). Moreover, the Second Circuit has "stated on numerous occasions" that the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted). Accordingly, the ALJ erred when he discounted Henley's credibility based on her daily activities.

### B. Treatment History

The ALJ also discounted Henley's credibility because she "has not generally received the type of medical treatment one would expect for a totally disabled individual. [Henley] cancelled or failed to show up for appointments on a number of occasions." Tr. 21.

When an ALJ assesses the credibility of a claimant's statements, he is entitled to consider treatment the claimant received to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). The ALJ cannot "play doctor," however, and rely on his lay opinion over the

---

[4] *See* S.S.R. 96-8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

7

competent medical opinions before him. *Wilson*, 213 F. Supp. 3d at 490 ("The ALJ further opined that Plaintiff had 'not generally received the type of medical treatment one would expect for a totally disabled individual.' This amounts to the ALJ improperly 'playing doctor,' by relying on his own lay opinion over the multiple, competent medical opinions before him.") (citations omitted).

The ALJ also cannot "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." S.S.R. 96-7p, 1996 WL 374186, at *7. "This is because, as previous courts have recognized, a person who suffers from psychological and emotional difficulties may lack the rationality to decide whether to continue treatment or medication." *Williams v. Colvin*, No. 15-CV-468-FPG, 2016 WL 4257560, at *3 (W.D.N.Y. Aug. 12, 2016) (internal quotation marks and citations omitted); *see also Simpson v. Colvin*, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15 (W.D.N.Y Aug. 25, 2016) (noting that "faulting a person with diagnosed mental illnesses . . . for failing to pursue mental health treatment is a questionable practice") (citations omitted). Of particular relevance here, because the ALJ found that Henley's bipolar disorder was a severe impairment, "courts have recognized that failure to comply with treatment can be a direct result of bipolar disorder." *Jimmeson v. Berryhill*, 243 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) (noting that "the ALJ repeatedly drew negative inferences from plaintiff's struggles with treatment compliance, but did not distinctly consider whether such difficulties could be a manifestation of plaintiff's bipolar or impulse control disorders").

Here, the ALJ concluded that Henley lacked credibility because her treatment history was not what "one would expect for a totally disabled individual," which constituted improper reliance on his lay opinion. The ALJ also found that Henley's failure to maintain appointments undermined her credibility without considering whether there was an explanation for her actions or whether her mental impairments affected her judgment to appropriately comply with treatment. Accordingly, the ALJ erred when he discounted Henley's credibility for these reasons.

### C. Work History

The ALJ also discounted Henley's credibility because her "work history shows that [she] worked only sporadically prior to the alleged disability onset date, which raises a question as to whether [her] continuing unemployment is actually due to medical impairments." Tr. 21.

Pursuant to the SSA's regulations, the ALJ was entitled to consider Henley's prior work record when he evaluated the intensity and persistence of her symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, "[j]ust as a good work history may be deemed probative of credibility, poor work history may prove probative as well." *Schaal*, 134 F.3d at 502. Although poor work history may indicate that a claimant is not credible, it "might also support an inference that a claimant's testimony of disability is truthful." *Id.* This is because "[a] claimant's failure to work might stem from her inability to work as easily as her unwillingness to work." *Id.* "Therefore, a consideration of work history must be undertaken with great care." *Id.* The "ALJ should explore a claimant's poor work history to determine whether her absence from the workplace cannot be explained adequately (making appropriate a negative inference), or whether her absence is consistent with her claim of disability." *Id.*

There is no evidence that the ALJ considered whether Henley's poor work history might be consistent with her disability claim. He merely indicated that her work history "raises a

9

question" as to whether her unemployment is due to medical impairments. This reasoning is not "sufficiently specific" to make it clear to Henley and the Court how her work history affected her credibility.

### D. Hearing Demeanor

Finally, the ALJ discounted Henley's credibility because "although [she] alleged an emotional impairment, she related well to the [ALJ] (and to her representative) at the hearing and she answered questions quickly and appropriately without any evidence of a social or memory or concentration problem. There was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing." Tr. 21.

The SSA's regulations allow "observations by [its] employees and other persons" to be treated as evidence. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). In the context of an alleged physical disability, the ALJ may consider "physical demeanor as one of several factors in evaluating credibility," however, "such observations should be assigned only limited weight." *Branca v. Comm'r of Soc. Sec.*, No. 12-CV-643 (JFB), 2013 WL 5274310, at *14 (E.D.N.Y. Sept. 18, 2013) (quoting *Schaal*, 134 F.3d at 502). "This technique is known as the 'sit and squirm index' and has been heavily criticized in this Circuit." *Nix v. Colvin*, No. 15-CV-0328-FPG, 2016 WL 3681463, at *7 (W.D.N.Y. July 6, 2016) (citations omitted).

This practice is particularly troubling in the mental health context, where the SSA recognizes the "[n]eed for longitudinal evidence," Listings § 12.00(D)(2), because mental disabilities "are best diagnosed over time," *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (noting that treating opinions are particularly important in the mental health context and should be given controlling weight over a consultative examiner's opinion based "solely on an examination for purposes of the disability proceedings themselves").

Here, the ALJ discounted Henley's allegations of mental impairments based on his observation of her during a 35-minute hearing. Tr. 37-69. This was wholly improper as the ALJ had no basis, except for his own lay opinion, to conclude that the way Henley interacted with others and answered questions undermined her credibility and indicated an ability to work full time.

For all of the reasons stated, the Court finds that the ALJ's credibility determination is not supported by substantial evidence and that remand is required.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: August 15, 2018
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court